## NEWTON EXR. OF WALTERS VS. FIELD.

Where a party makes a fruitless attempt to interpose a defence at law, which is exclu-sively an equitable one, and not cognizable by the court of law, he is not thereby debarred from the right to resort to equity.

Watkins obtained a judgment against Johnston, and Walters as his security; issued a writ of garnishment against Field, the debtor of Johnson; before judgment on the garnishment, the original judgment was paid by Walters, but not entered satisfied; execution was issued on the garnishment judgment, for the benefit of Walters; Field filed his bill for injunction, alleging that a judgment had been rendered against him, as the security of Johnston, which he had paid, to a larger amount than his debt to Johnston: HELD,

1. That the garnishment judgment must be considered as *res adjudicata* as between Watkins and Field as to any defence that could have been made at law; but not so in a proceeding between Walters and Field.

2. That when Walters paid the original judgment, it was extinguished at law as be-tween the parties to it.

3. That if the garnishment judgment had been rendered at the time the original judg-ment was paid, it would also have been extinguished, so far as Watkins was con-cerned, being but an incident to the original judgment.

4. That if Field had known that the original judgment had been paid, he might have successfully interposed it as a defence to the garnishment suit.

5. That as Field had no legal or actual notice of the payment of the original judgment, and was thereby deprived of interposing that defence to the garnishment suit, he had sufficient grounds to resort to a court of equity to enjoin the execution of the judg-ment, so far as Watkins was concerned.

6. That though the payment of the original judgment extinguished it, and extinguished the right of Watkins to enforce the garnishment judgment against Field, it did not ex-tinguish the debt which Field owed to Johnson: and so, had the bill of Field been filed to be relieved from the garnishment judgment, exclusively upon the ground of such payment, without any equitable right of his own, equity would not have relieved him without his paying to Walters the debt which he owed to Johnston; or had Walters, by a cross-bill, shown that his equity as security was superior to Field's, the court might well have decreed that Field pay him the amount of the garnishment judg-ment.

7. That the garnishment judgment having been extinguished by the payment of the

OF THE STATE OF ARKANSAS. 217

TERM, 1855.]                Newton ex. of Walters vs. Field.

original judgment, and the plaintiff enjoined from proceeding on it, if Walters had any equitable right to collect the money, on the doctrine of subrogation, he could not do so by an execution on the judgment, but would be compelled to apply to a court of equity.

8. Regarding Walters and Field as having equal claims to be protected in equity from loss, a court of chancery would not compel Field to surrender up to Walters an indemnity which he held in his own hands.

*Appeal from the Circuit Court of Pulaski County in Chancery.*

Hon. WM. H. FEILD, Circuit Judge.

WATKINS & CURRAN, for the appellant. So far as the ground of relief set up in the bill, is the same as that set up in the garnishment suit, we insist that the complainant is concluded by the decision made in that case, and that the question is *res adjudicata*. A court of chancery cannot review the supposed errors of a court of law, much less of the Supreme Court, either directly or indirectly. *Watkins ad. vs. McDonald et al.,* 3 *Ark. Rep.* 270.

The allegation that the judgment at law was secretly extinguished, is wholly unfounded. The judgment creditor, pending the garnishment, had coerced payment of Walters, the security; but the effect of that payment was not to extinguish the original judgment and discharge the garnishee.

The rule in England does not appear to be very well settled. See *Copis vs. Middleton,* 1 *Turner & Russell* 231, and 1 *Leading cases in Equity* 60, where this whole subject is fully discussed. *Parsons vs. Briddock,* 2 *Verm.* 608.

But there seems to be but little doubt or conflict of authority in the United States, on this subject. See 1 *Leading cases in Equity, p.* 88, *and the authorities there collected.*

Now, in this case, the garnishment is a distinct proceeding from the judgment, ancillary to it, but nevertheless, a security, which the creditor had acquired, in addition to his judgment against Johnston and Walters; and the payment by Walters did not ex-

15B

tinguish the original judgment itself, but equity would keep it alive, for his protection; so, for instance, as to give him the benefit of any lien of that judgment on the estate of Johnston.

There are many cases where the surety would have to apply to a court of chancery, in order to obtain the benefit or enforcement of assets or securities acquired by the creditor or a co-security. But, in this case, Walters has the legal advantage of the judgment as a subsisting security, susceptible of being enforced at law, and the payment by him is regarded as an equitable assignment of the debt, and of the judgment upon *it*, so *as to* authorize him *to sue or issue execution* in the creditor's name for his use. See *authorities collected, p.* 92, 1 *Leading cases in Equity.*

A court of law, at this day, is fully competent to take cognizance of such equities, and will not refuse to protect them.

TRAPNALL, for the appellee. That the security, who pays the debt of the principal, is a favorite of equity, and entitled thereby to be subrogated to the securities held by the creditor, is a familiar principle. But there is a great diversity of authority as to the extent of it.

The English, and a large proportion of the American courts, confine the principle to those *independent collateral* securities which are not extinguished *ipso facto* by the payment: such as mortgages, pledges of personal property, &c. *Copis vs. Middleton,* 1 *Turner & Russell* 229; *Hodgson vs. Shaw,* 3 *Mylne & Keene* 183; *Jones vs. Davids,* 4 *Russell* 227; *Dennis' exr. vs. Ryden,* 2 *McLain* 454; 1 *Story's Equity* 509, 510, 513, 514, 515, *and notes; Bank of the United States vs. Stewart,* 4 *Dana* 28: and assert that the original debt and judgment, and all proceedings, judgments, and securities, incident thereto, are extinguished by the payment, and cannot, in law or equity, be made available to the security. *Story's Equity* 512, 513, 514; *Gammon vs. Stone,* 1 *Vesey,* 339; *Woffington vs. Shaw,* 2 *Vesey* 560; *Hodgson vs. Shaw, ub. sup.;* 2 *Greenleaf* 343, 344, 345; 10 *J. R.* 524.

The security must resort to proceedings in equity to get the benefit of such securities, to prevent the reconveyance of the mortgage, or the assignment and delivery of the securities. *Retten House vs. Levering*, 6 *Watts & Serg.* 190; *Beardsly vs. Warner*, 6 *Wend.* 610; 4 *J. C. R.* 132.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the 15th February, 1847, William Field filed a bill on the chancery side of the Pulaski Circuit Court, against Robert A. Watkins and Ebenezer Walters, to injoin the execution of a judgment at law.

The bill alleges, that on the 12th day of March, 1841, Robert A. Watkins obtained a judgment, on the law side of said court, against John W. Johnston, and Ebenezer Walters, for $970 debt, $19 72 damages, and for costs.

On the 28th of April, 1843, Watkins sued out a garnishment upon said judgment against complainant, alleging that the judgment remained unsatisfied, and that he was indebted to Johnston, &c., returnable to the May Term of said court, 1843, which was executed upon complainant, on the 2d day of May, 1843. On the 29th of the same month, Watkins exhibited his allegations and interrogatories, calling on complainant to state what amount he was owing Johnston, when it was due, &c., to which complainant filed his answer; and, on the 9th of June, 1846, after various intermediate proceedings, judgment was rendered against complainant, as such garnishee, for $831, with costs, which amounted to $15 30. A certified copy of the proceedings and judgment is exhibited.

That, after the rendition of said judgment, complainant was informed, and alleges it to be true, that the original judgment in favor of Watkins, against Johnston and Walters, had been fully satisfied and discharged, by the payment thereof to Watkins, or his attorney. That the payment was not made upon execution, but without process, and though the judgment had been long satisfied, there was no evidence of record of such payment, and no entry of satisfaction of record, as required by law, &c.

That the payment of said judgment had been kept secret among the parties, and a fraudulent combination formed between the defendants, to keep the judgment against complainant alive and in force, for the purpose of coercing the amount out of him, to be appropriated to the reimbursement of Walters, who was the security of Johnston to Watkins, and had the original judgment to pay.

That complainant was not apprized of the payment of said judgment, until shortly before filing the bill, and long after the judgment was obtained against him in the garnishment.

That complainant had applied to Watkins to desist from the prosecution of said judgment, and to enter satisfaction of both of said judgments according to the statute, &c., but he, combining with Walters, to defraud complainant, &c., had refused to do so, and was harrassing him with an execution, &c. A certified copy of the execution is exhibited.

*Prayer* for injunction, restraining all further proceedings upon the execution and judgment; and, that on the final hearing the injunction be made perpetual, &c., and for general relief.

The answer of Watkins admits that he obtained judgment against Johnston and Walters at the time, and for the sums stated in the bill. That a garnishment was sued out upon the judgment against complainant, as a debtor to Johnston, served, returned, and judgment rendered thereon, as alleged in the bill. That execution had been issued, upon the judgment against complainant, and returned unsatisfied. That Walters was the security of Johnston upon the debt, on which the original judgment was recovered, the debt being for the purchase money of a tract of land sold by Watkins to Johnston. Avers that at the time the original judgment was obtained, Johnston was insolvent, or in failing circumstances, and had since become utterly insolvent. That before, and at the time of the maturity of the debt Walters being uneasy as such security, urged respondent to bring suit upon it, and after the judgment was obtained, he gave Walters control of the execution, to enable him, if possible, to protect him-

self by causing the money to be made out of Johnston's property, but no part of it was made.

That Walters represented to respondent, that complainant was indebted to Johnston, and urged him to sue out a garnishment against complainant upon the original judgment, for the benefit of Walters; and upon his agreeing to pay all costs that might be incurred by respondent, in the prosecution of such garnishment, it was sued out, on the 28th April, 1843. That afterwards, on the 2d November, 1843, the garnishment being contested by complainant, and respondent becoming apprehensive of incurring costs, his attorney took from Walters a written agreement to pay all such costs as might be incurred, &c. A copy of which is exhibited.

That, at the earnest solicitations of Walters, respondent delayed coercing payment of the original judgment out of him, until such time as he had secured, or endeavored to secure himself, in respect of such judgment, by means of execution and garnishment aforesaid, out of the property and effects of Johnston; respondent relying upon the promises of Walters to pay said judgment without execution, whenever the necessities of respondent required him to have the money. That accordingly Walters afterwards paid upon said judgment to respondent's attorney $500 on the 23d May, 1844, $500 on the 24th July, 1844, and $182 11, on 21st November, 1844, when respondent gave to Walters a receipt in full, of the debt, damages, and interest, due upon the judgment.

Respondent denies any fraud or concealment on his part, in respect of the matters aforesaid; and avers that when he received payment of the judgment of Walters, as the security of Johnston, he supposed that the operation of it was an assignment and transfer to Walters of the judgment, and of all beneficial interest, which respondent had therein, as against Johnston, and of all liens and securities which respondent had obtained thereon, as against Johnston, by means of execution, and the garnishment aforesaid, and he submits that such was the result, and by operation of law, a substitution of Walters in the place of respondent,

in respect of said judgment, and all securities which respondent had obtained thereon, as between Walters and Johnston, the principal debtor, and which Walters had the right to enforce either at law or in equity. Respondent denies that complainant ever requested him to enter satisfaction of the garnishment judgment, or to desist from further prosecution thereof, and that he ever called upon him to know if Walters had paid the original judgment, which fact respondent had no motive to conceal.

Respondent states that as between complainant and Walters, he stood indifferent in interest, and would desire to see them both saved harmless, &c.; but submits that the operation of the garnishment in question, was a legal transfer to respondent of the indebtedness of complainant to Johnston, at the time of the service of the writ of garnishment which could not be impaired by the subsequent payment of the original judgment by Walters, as the security of Johnston; and the writ of garnishment having been sued out at the instance, and for the benefit of Walters, respondent was bound in equity, to hold, and enforce, for the benefit of Walters, all securities obtained by respondent, from or against Johnston, under the original judgment; and that if he had canceled any such securities, or desisted from the prosecution of said suit of garnishment, he would be liable therefor to Walters; and, therefore, he submits himself to such decree as the court may render in the premises.

Walters, in his answer, makes the same admissions, and states the same facts, substantially, as are contained in the answer of Watkins; and, in addition thereto, sets out more fully the proceedings in the garnishment suit in the court below, and in this court on error, as reported in *Field vs. Watkins*, 5 *Ark.* 672, and *Watkins vs. Field*, 1 *Eng.* 391, which will be noticed in the progress of this opinion.

He submits that the service of the writ of garnishment upon complainant, operated as an assignment to Watkins, of the then indebtedness of complainant to Johnston, which was not divested by the subsequent payment of the original judgment by respon-

dent to Watkins, who was bound to hold, and enforce the garnishment, for the use and benefit of respondent, as the security of Johnston, and that the payment by respondent of the original judgment, was a subrogation in equity of respondent to all the rights of Watkins, in respect of the original judgment, as against Johnston, the principal debtor therein, and of any security previously obtained by Watkins, by means of the service of the writ of garnishment upon complainant.

Denies all fraud and concealment in the payment of the original judgment, and that complainant ever called upon him for information in regard to it. Avers that such payment was known to sundry persons, and that complainant might, if material to his defence to the garnishment, have ascertained the fact by the exercise of ordinary diligence, long anterior to the final judgment therein, &c. That Watkins caused an execution to be issued upon the original judgment, returnable to the November term, 1844, which was levied upon the property of respondent, and he desiring to avoid costs, and the injury of his credit, by the advertizement of his property, made an agreement with Watkins, to the effect, that he would pay the amount due upon the execution before the return day, and that on his failure to do so, the sheriff should sell respondent's property, without advertisement, which agreement was endorsed upon the execution, signed by respondent and the attorney of Watkins, and returned into the clerk's office by the sheriff, and that complainant was bound to have known, on inspection of the execution and return, that the judgment was paid, or that it was at least sufficient to have put him upon inquiry, &c. A copy of the execution and return is exhibited. Admits that no entry of satisfaction of the judgement was made of record, &c.

Insists that the bill should be dismissed for want of equity, and Watkins permitted to enforce the garnishment judgment for his benefit.

Afterwards, the death of Walters was suggested, and Thomas W. Newton, his executor, substituted as a party defendant.

On the 31st July, 1849, complainant filed an amended bill, stating, in addition to the allegations contained in the original bill, that he was the security of Johnston, on a note to the Real Estate Bank, for $2.300 70, dated 14th October, 1840, and due February 16th, 1841. That Johnston, in a short time thereafter, became hopelessly insolvent, and that complainant, as his security, had to pay; and on the 30th October, 1844, did pay to the said Bank $750 on a judgment rendered on said debt, in favor of the Bank, against Johnston and complainant, in the Pulaski Circuit Court, on the 3d December, 1842, which judgment, at the time of such payment, was in full force, and constituted a lien upon the real estate of complainant. A certified copy whereof is exhibited.

That the 21*st section*, 93*d chapter*, *Revised Statutes*, provides, that when a judgment is satisfied, otherwise than by execution, the plaintiff shall, within sixty days thereafter, acknowledge satisfaction before the clerk of the court in which such judgment was rendered; and the 23d section provides, that on failure to enter such satisfaction, the plaintiff shall pay and forfeit to the defendant in such judgment, any sum not less than five, nor more than one hundred and fifty dollars.

Complainant charges that on payment of said judgment to Watkins by Walters, the same was satisfied in law, and the failure to enter satisfaction, was a violation of the law, and of the plaintiff's duty to Johnston, and a palpable fraud upon complainant, and was done by a combination between Walters and Watkins, to injure and sacrifice complainant in the premises.

That if complainant had been aware of the above facts, before judgment was rendered against him in the writ of garnishment, he would have set them up in defence, and shown to the court that his equity in the premises was prior to that of Walters; but these facts were unknown to complainant at the time, and he was not aware of them until long after the judgment was rendered against him on said writ, in favor of Watkins. Prayer, as in the original bill.

Watkins, and Newton, as executor of Walters, filed a joint answer to the amended bill. They profess to have no knowledge of the alleged payment by complainant to the Bank, as Johnston's security, or as to the judgment, upon which it is alleged to have been made, being in force and constituting a lien upon complainant's real estate, and require proof, &c. They aver that if such payment was made, it was made in the notes of the Bank, or other depreciated currency, worth, at the time of the payment, not more than 30 cents on the dollar. They insist that there is no equity in the amended bill, and claim the benefit of a demurrer upon the hearing.

Deny all fraud and concealment in reference to the payment, by Walters, of the original judgment, &c.

The deposition of George C. Watkins was read upon the hearing. He proves that Walters was Johnston's security on the note, upon which the original judgment was obtained; the insolvency of Johnston; the issuance and prosecution of the garnishment against complainant, to indemnify Walters: the payment of the original judgment by Walters, as stated in the answer of Watkins, &c. Witness was the attorney of Watkins, and knew of no fraud or concealment in regard to the payment of the original judgment by Walters.

The court decreed that the judgment in favor of Watkins against Johnston and Walters, having been fully paid before final judgment against Field on the writ of garnishment, no execution could issue thereon against Field; and that the garnishment judgment of Watkins against Field, be perpetually enjoined, &c. From this decree, the executor of Walters appealed. Watkins took no appeal.

1. It is insisted, on the part of appellant, that Field cannot set up his liability as security for Johnston to the Bank, or a payment thereon, as grounds of relief in equity, because he pleaded both the liability and payment as a defence to the garnishment in a court of law, and that the matter is *res adjudicata*.

2. That on the payment by Walters, as the security of John-

ston, of the original judgment, he was subrogated to the right of Watkins to enforce the garnishment against Field for his indemnity; that the payment of the judgment did not destroy the right to proceed upon the garnishment at law, for the benefit of the security who paid it.

3. On the other hand, it is insisted for Field, that the payment of the original judgment extinguished it, and the garnishment being but an incident to the judgment, springing out of and resting upon it, all right to proceed upon and enforce it, ceased upon the payment of the judgment.

4. That even if Walters was subrogated to the right of Watkins to enforce the garnishment, this was in equity, and could not be done by the issuance of an execution upon the garnishment judgment, which at law was extinguished, but that Walters would have to resort to a bill in equity to compel Field to pay the debt for his benefit.

5. That Field being also the security of Johnston, for a larger amount than he owed him, and Johnston being insolvent, a court of equity would not compel Field to surrender to Walters an indemnity which he held in his own hands, and claimed to hold to save him harmless for so much.

1. Watkins having submitted to the decree of the court below, and taken no appeal therefrom, the decree, as to him, is conclusive and final. He is perpetually enjoined from attempting to execute the garnishment judgment against Field. The contest in this court, is between the executor of Walters and Field.

The transcript of the proceedings in the garnishment suit, shows that at the return term, May, 1843, Field set up as a defence in his answer to the allegations, &c., filed by Watkins, that in December, 1842, before the issuance of the writ, the Real Estate Bank obtained a judgment against him, as the security of Johnston, for $2.370, besides interest and costs, which remained in full force, &c.

That Johnston and his co-securities were insolvent, and he would have the debt to pay, &c. The answer was held to be insufficient,

and judgment rendered against him, and he brought error. This court, by LACY, Judge, said:

"Field has no right to set off his demands against Johnston, in this form of action. The authorities on this point are clear. The demands are not between the same parties, nor are they mutual subsisting rights. How far the defendant (Field) may be able to avail himself of this defence in a court of equity, by proving the insolvency of Johnston and his co-securities, is a question not before us, and of course, upon which we express no opinion."

The judgment was, however, reversed for excess, and the cause remanded.

If this defence was exclusively an equitable one, and not at all cognizable by the court of law, surely Field did not debar himself from the right to resort to equity, by a fruitless attempt to interpose the defence at law. The court expressly said that the defence, if good at all, was available in equity only.

On the remanding of the cause, Field, by permission of the court, amended his answer, showing that since the service of the garnishment upon him, he had paid, on the judgment obtained against him by the Real Estate Bank, as the security of Johnston, $750; and therefore, claimed not to be indebted to Johnston, and asked to be discharged. The court thereupon (April Term, 1845,) gave judgment that he be discharged, and Watkins brought error.

This court, by OLDHAM, Judge, said: "The service of the writ of garnishment was a transfer, by operation of law, of the amount due by the garnishee (Field) to the original defendant, (Johnston), to the judgment creditor, (Watkins), for the satisfaction of his judgment, and the right of the creditor to a satisfaction of his judgment out of the debt thus transferred, cannot be defeated by a subsequent payment of the garnishee, whether made voluntarily or by legal coercion. *Watkins vs. Field*, 1 *Eng. Rep.* 391.

The judgment was reversed, the cause remanded, and final judgment rendered against Field, on the 9th June, 1846, which is the judgment injoined by the decree of the court below in this cause.

This court, in the last case, seems to have decided upon the merits of the defence, and makes no intimation that it was properly cognizable or available in equity.  If the court meant to decide that the defence was such as could be made at law, but was not a good defence, then this point would be *res adjudicata*, as between *Field and Watkins*, who were the parties to that suit, and contesting that question; though it would seem that if there was anything in the intimation of the court, in the first decision, that the judgment liability of Field, as the security of Johnston, would be available as a defence in equity, such defence would be strengthened by the fact that Field had made a payment upon the judgment equal to his indebtedness to Johnston, as stated in his amended answer to the garnishment.

But, be this as it may, let it be assumed that this point is *res adjudicata*, as between Watkins and Field, and if the original judgment had not been paid to Watkins, and Field had filed the bill to enjoin the garnishment judgment, exclusively on the ground that he had been compelled to pay, after the service of the writ of garnishment upon him, on the judgment against him as the security of Johnston to the Real Estate Bank, an amount equal to what he was owing Johnston, then the court of equity might have held that this defence had been decided against him in the court of law, and was *res adjudicata*.

But the original judgment has been paid to Watkins : the judgment against Field upon the garnishment, was but an incident to the original judgment, and must be regarded as having been paid also, so far as Watkins is concerned.  He has been perpetually injoined from collecting it.  Walters, who was not a party to the garnishment suit, claims to be subrogated in equity to the right which Watkins had to enforce the payment of the garnishment judgment against Field : but even if he had filed a bill to compel Field to pay to him the debt which was the foundation of the judgment in the garnishment suit, it could hardly be said that the right of Field to withhold from him the debt, on account of his having previously paid the amount to the Real Estate Bank,

OF THE STATE OF ARKANSAS. 229

TERM, 1855.] Newton ex. of Walters vs. Field.

as the security of Johnston, was *res adjudicata*, as between him and Walters. Surely the court of chancery would regard the equitable rights of Field as well as of Walters, in such a contest between them.

The 2d and 3d points, made for the parties in the argument of the cause, present for consideration the question, as to the extent of the right of a security, who pays the debt of his principal, to be subrogated to the benefit of securities acquired by the creditor from the principal debtor.

In *Copis vs. Middleton*, 1 *Turner & Russell* 224, it was held, that where a security pays a bond for his principal, he is a simple contract creditor only of the principal — that the bond was extinguished on the payment of it. Lord ELDON said: "It is a general rule, that in equity, a surety is entitled to the benefits of all the securities which the creditor has against the principal, but then the nature of those securities must be considered: when there is a bond merely, if an action was brought upon the bond, it would appear, upon oyer of the bond, that the debt was extinguished: the general rule, therefore, must be qualified by considering it to apply to such securities as continue to exist, and do not get back upon payment to the person of the principal debtor: in the case for instance, where in addition to the bond, there is a mortgage, with a covenant on the part of the principal debtor to pay the money, the surety paying the money, would be entitled to say, I have lost the benefit of the bond, but the creditor has a mortgage, and I have a right to the benefit of the mortgaged estate, which has not got back to the creditor."

In *Jones vs. Davis*, 4 *Russell Rep.* 272; 4 *Eng. Ch. Rep.* 278, the surety, who paid a bond for his principal, and took an assignment of it, filed a bill against the heir and executor of the principal to enforce the payment of the bond, and it was decided, that the surety was but a simple contract creditor of the testator—that the payment of the bond extinguished it, and the assignment of it to the surety, gave to him no right of action upon it. The bill

was dismissed for want of equity, on the authority of *Copis vs. Middleton,* and other cases.

To the same effect are *Gammon vs. Stone,* 1 *Vesey Sen.* 339, *Woffington vs. Sparks,* 2 *ib.* 570. In the case last cited, Sir Thomas CLARK said, the assignment would be of no use, "because the bond was given only for the payment of one sum of money, and when once satisfied to the obligee, is *functus officio.* But it is said, though this is so in the case of a bond, a judgment would have been different : consider how this is. Suppose execution had been offered to be taken out upon that judgment : that if judgment was entered up after the money was paid, no doubt but that the King's Bench would have set it aside. I mean a judgment entered up in consequence of a motion for liberty to enter up a judgment on a stale bond by the obligee after such time as he had received the money. But, take it the other way, that the money was not paid when the judgment was entered up, if execution were offered to be taken out upon the money's being paid afterward, it is allowed, relief might be had. I believe there might be an injunction (as it has been said) upon a bill here."

See, also, *Hodgson vs. Shaw,* 3 *Myl. & Keene* 189, sustaining *Copis vs. Middleton,* and *Armitage vs. Baldwin,* 5 *Beav.,* where a creditor sued his principal debtor and recovered a judgment against him, and the bail in the action. The surety thereupon paid and satisfied to the creditor, the amount of the judgments, with interest and costs, and took an assignment thereof. Lord LANGDALE, M. R., held, that the judgment was discharged, and that the surety could not recover on the judgment against the bail; though it seems that a different doctrine had been formerly held by the English Courts of Equity, as in *Parsons vs. Briddock,* 2 *Vern.* 608. See 1 *White & Tudor's Leading cases in Eq.,* by *Hare & Wallace,* 84.

So it was held in England, that where several judgments had been obtained by the creditor against the principal and surety, and the latter had paid the debt on the judgment against him, and then sought an assignment to be made of the judgment against

the principal, the judgment was effectually extinguished by such payment, and the surety would not be permitted to avail himself of it against the principal. *Dowliggin vs. Bourne*, 2 *Younge and Call Exch. Ca.* 462, cited in 1 *Story's Eq.*, sec. 499.

STORY, (1 *Equity*, sec. 499,) after commenting upon the English doctrine, as held in the above and other cases, that the payment of a bond or judgment, extinguishes it, and that the surety, who makes the payment, is entitled to no assignment, &c. says : "The error of the contrary doctrine, if indeed, upon the principles of enlarged equity, any there be, seems to have arisen from confounding the right of the surety, on payment of the debt, to be substituted for the creditor, and to have an assignment of any *independent collateral* securities, with the supposed right to have the *original debt* assigned. Such independent collateral securities may well be required to be assigned by the creditor in favor of the surety: because, in many cases, the principal would not be entitled to have a re-transfer thereof from the surety, without paying him the sums advanced by him to the creditor, as a matter of equity between the parties. But the assignment of the *debt itself*, which had been already *paid*, would be a *mere nullity* in *equity*, as well as *at law*, since it could not have, in the hands of the surety, any subsisting obligation."

Yet, he continues in the same section, "There are many cases in which a surety paying a debt, will be entitled to stand in the place of the creditor, or to obtain the full benefit of all the proceedings of the creditor against the principal. Thus, for example, if the creditor, in case of the bankruptcy of the principal, has proved his debt before the commissioners, and then the surety pays the debt, the latter will be entitled to the dividends declared on his estate, and the creditor will be held to be his trustee for this purpose. So the surety may compel the creditor to go in and prove his debt before the commissioners, &c., [so when a surety for the purchase money of land, pays the debt, he is subrogated to the vendor's lien on the land for the unpaid purchase money]. In cases of this sort, courts of equity seem to be regulated by the

same principles which govern their interference, in favor of sureties, to compel creditors to proceed in the first instance against the principal for the recovery of their debts." (These quotations are made from the *6th Edition* of the work).

It seems that some of the American courts have gone much further than the English courts in favor of subrogating the surety, paying the debt for the principal, to the rights and securities of the creditor.

*Hare & Wallace*, the American editors of *White and Tudor's Leading cases in Equity, vol.* 1, *p.* 87, sum up, as the result of a number of decisions in this country, thus: "As soon as the surety has paid the debt, an equity arises in his favor, to have all the securities original and collateral, which the creditor held against the person or property of the principal debtor, transferred to him, and to avail himself of them as fully, as the creditor could have done; for the purpose of obtaining indemnity from the principal, he is considered as at once subrogated to all the rights, remedies and securities of the creditor, as substituted in the place of the creditor, and entitled to enforce all liens, priorities and means of payment, as against the principal, and to have the benefit even of securities that were given without his knowledge." In support of this summary, they cited, *Lidderdale vs. Robinson*, 2 *Brockenborough* 160, 167; *same case*, 12 *Wheat.* 594, 596; *McMahon vs. Fawcett*, 2 *Randolph* 514, 530; *Hampton vs. Levy*, 1 *Mccord's Chancery* 107, 117; *Perkins et al. vs. Kershaw et al.*, 1 *Hill's Ch.*, 344, 351; *Railroad Co. et al. vs. Clayhorn et al.*, 1 *Speer's Equity* 547, 561; *Loud vs. Sergeant*, 1 *Edwards Ch.* 164, 168; *Lathrop & Dale's Appeal*, 1 *Barr* 512, 517; *Atwood vs. Vincent*, 17 *Conn.* 576, 583; *Hardcastle vs. Commercial Bank of Delaware*, 1 *Harrington* 374, 377, *and note; Burk et al. vs. Chrisman et al.*, 3 *B. Monroe* 50; *Cullom vs. Emanuel et al.*, 1 *Ala.* 23, 28; *Brown vs. Lang et al.*, 4 *ib.* 50; *Commercial Bank of Lake Erie vs. Western Bank et al.*, 11 *Ohio* 444, 449; *Miller vs. Woodward & Thornton admr.*, 8 *Missouri* 169, 175; *Hoyes vs. Ward*, 4 *Johnson's Ch. R.* 123, 130.

These were cases where the surety paying the debt for the principal, sought in equity to be subrogated to the securities, liens, &c., of the creditor, and so far as we have been able to obtain access to the books containing the cases, they sustain, to a greater or less degree, the above summary presenting the question in various phases, according to the particular facts of each case.

The same editors say, (*on page* 88, *vol.* 1,) "Payment by one who stands in the relation of a security, although it may extinguish the remedy or discharge the security, as respects the creditor, has not that effect as between the principal debtor and the surety.   As between them, it is in the nature of a purchase by the surety from the creditor; it operates an assignment in equity of the debt, and of all legal proceedings upon it, and gives a right *in equity*, to call for an assignment of all securities, and in favor of the surety, the debt and all its obligations and incidents are considered as still subsisting."

In some of these cases, it has been held, that where a judgment constitutes a lien upon the property of the principal debtor, and the surety pays the debt, though as between the principal debtor and creditor, the judgment is extinguished at law ; yet, as between the surety and the principal debtor, in equity, it is regarded as still in force, and the surety may, in a court of equity, reimburse himself out of the property on which the judgment constituted a lien, in preference to junior incumbrances.

The question being measurably a new one in this court, the above authorities have been cited to show, to some extent, the state of the decisions on this interesting subject in England, as well as in our own country.   It is sufficient for us, however, to decide the case before us in the aspect in which it is presented, without sanctioning or disapproving the abstract general rules above quoted.

In view of all the authorities, which we have been able to examine, we are of the opinion that when Walters paid to Watkins the original judgment, it was extinguished at law, as between

Watkins, in whose favor the judgment was obtained, and Johnston and Walters the defendants therein.

That if the judgment upon the garnishment against Field had been finally rendered at the time of the payment of the original judgment, it would also have been extinguished at law, so far as Watkins was concerned, being but an incident to the original judgment, and Watkins being entitled to but one satisfaction.

That Walters having paid the original judgment before final judgment was rendered upon the garnishment, had Field known that fact, and interposed it as a defence by an amended answer, the court of law could have rendered no judgment againt him in favor of Watkins for the debt which he owed to Johnston.

That on payment of the original judgment, Watkins having failed to enter satisfaction thereof, in the manner prescribed by the statute, and Field being thereby deprived of the legal mode of deriving a knowledge of such satisfaction, and having no actual notice of the payment in any other manner, and judgment having been rendered against him upon the garnishment after such payment, he had sufficient grounds to resort to a court of equity, to enjoin the execution of the judgment, so far as Watkins was concerned.

But though the payment of the original judgment by Walters extinguished it, and extinguished the right of Watkins to proceed upon and enforce the garnishment against Field, at law, yet such payment did not extinguish the debt which Field owed to Johnston, which was a different debt from the one that Walters paid to Watkins.

This being the case, we are inclined to the opinion that had Field filed his bill to be relieved against the judgment, exclusively upon the ground of the payment of the original judgment by Walters, having made Walters a party, the court of equity would hardly have granted him such relief, without his paying to Walters the debt which he owed to Johnston, in the absence of any showing on his part of an equitable right to withhold

such payment, on the grounds, that he who seeks equity, must do equity.

Or, in the case made by Field, in his original and amended bill, had Walters filed a cross-bill and shown that he had a better right in equity to the fund in the hands of Field, than Field had to retain it, in consequence of his own securityship for Johnston, the court might well have decreed, upon the cross-bill, that Field pay the money to Walters. But in this case, the court below granted to Field the relief which he prayed against Watkins—a perpetual injunction against his executing the judgment—and Watkins took no appeal from the decree. Walters having in no cross-bill, no decree was, or could have been rendered in his favor.

4. There was no decree against the executor of Walters in the court below but for costs. Suppose we were to reverse the decree, as the counsel for appellant thinks should be done, of what avail would that be to the executor of Walters? The execution of the judgment against Field by Watkins, in whose favor it stands upon the record of the law court, is perpetually injoined. At law, as a judgment in favor of Watkins, it is extinguished by the payment of the original judgment, to which it was but an incident. If execution is taken out upon it, it must be done in the name of Watkins, whose hands are tied up by the injunction. Can the executor of Walters, holding an equitable right to collect the money of Field on the doctrine of subrogation, without any decree of a court of chancery to enable him to enforce such right, put into motion an execution in the name of Watkins, who is enjoined from moving in the matter, upon a judgment enjoined, and extinguished at law, for the purpose of coercing satisfaction out of the property of Field? We think not. It seems to us that the doctrine of subrogation belongs to the courts of equity, and that such rights of sureties must be enforced by the decrees of these courts, upon proper cases made for their interposition, by parties claiming such rights.

5. But on the other hand, it may be supposed that the appeal of

Walter's executor brought up the entire decree of the court be-low, and that the whole case is open for review. Walters and Field were both the securities of Johnston, an insolvent principal. At the time Walters paid the judgment of Watkins, the Real Estate Bank had obtained a judgment against Field, as the surety of Johnston, for an amount largely over what Field owed him. After Watkins ceased to have any claim upon Field for the amount which he had garnisheed in his hands, Johnston could not himself have coerced Field to pay to him the debt without in-demnifying Field against loss as his security. *Abbey vs. Van Campen,* 1 *Freeman's Ch. R.* 273. Could Walters do more? Regarding Walters and Field as having equal claims to be pro-tected in equity from loss, surely the court would not compel Field to surrender up to Walters an indemnity, which he held in his own hands. The Bank obtained her judgment against Field be-fore Watkins took out the garnishment, and his claim to indemnity in equity, was hardly cut-off by the proceedings at law in the garn-ishment suit, where he was not permitted to interpose an equita-ble defence.

Upon any view of the case, we think the decree of the court below, should be affirmed.

Absent Mr. Justice WALKER.